## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **BMSH I KATY TX, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** _4:22-cv-218_ |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **SMITH SECKMAN REID, INC.** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

Plaintiff, BMSH I Katy TX, LLC ("Plaintiff" or "BMSH"), submits its Complaint against Defendant, Smith Seckman Reid, Inc. ("Defendant" or "SSR"), as follows:

## INTRODUCTION

1.     According to SSR's online marketing materials as early as 2015, it represents that it:

> SSR has become a leader among engineering firms in designing, consulting, and commissioning projects for public and private clients across the United States and around the world. Whether new construction or modernizing existing spaces, we have the depth of experience required to respond to client needs. [¶] SSR professionals offer a full range of engineering system designs and consulting services required by today's complex facilities. Our team focuses on providing system solutions that are operationally flexible, efficient, and sustainable.

129809670.1

*See* https://web.archive.org/web/20150211130619/http://www.ssr-inc.com/. As set forth in detail below, however, SSR's errors and omissions while serving as mechanical engineer during the design and construction of a residential senior living community in Richmond, Texas, caused extensive damages to the project and will require expensive repairs. As the owner of this residential community, BMSH brings this lawsuit in an effort to recoup its losses directly attributable to SSR's breach of contract and professional negligence.

## THE PARTIES

2.      BMSH I Katy TX, LLC, the plaintiff, is a Delaware limited liability company with its principal place of business located at 21700 Bellaire Boulevard, Richmond, Texas 77407. BMSH is authorized to transact business in the State of Texas.

3.      Smith Seckman Reid, Inc., the defendant, is a Tennessee corporation with a principal office located at 2995 Sidco Drive, Nashville, Tennessee 37204. SSR is authorized to transact business in the State of Texas.

## JURISDICTION AND VENUE

4.      The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and (c).  The parties are diverse and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  There is complete diversity in this case.  Plaintiff's citizenship for purposes of assessing diversity jurisdiction is Delaware and Iowa.  Specifically, Plaintiff is a Delaware limited liability company, and its sole member (BMSH I Katy JV Company LLC) is also Delaware limited liability company.  The members of BMSH I Katy JV Company LLC are Delaware and Iowa limited liability companies, with Delaware and Iowa members, respectively. Defendant's citizenship, on the other hand, is either Texas or Tennessee.  Defendant maintains a

129809670.1

principal office and headquarters in Nashville, Tennessee, and lists its principal place of business at 3700 West Sam Houston Parkway South, Suite 200, Houston Texas.

5.      The Court has personal jurisdiction over the parties because both parties submit to the jurisdiction of this Court. Further, SSR systematically and continuously conducts business in the State of Texas, and otherwise has minimum contacts with the State of Texas sufficient to establish personal jurisdiction over it.

6.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the property that is the subject of the action is situated in this District.  In addition, SSR has expressly consented to suit in this District.

## GENERAL ALLEGATIONS

### The Residential Project

7.      Plaintiff is the owner of a residential senior living community known as "The Delaney at Parkway Lakes," which is located at 21700 Bellaire Boulevard, Richmond, Texas (the "Residential Project" or "Project").

8.      Defendant SSR provided mechanical engineering and related services, including construction observations, during the construction of the Residential Project.

9.      The Residential Project is a 207-unit, 219,361-square-foot senior living facility comprised of a common area, an assisted living facility, and an independent living facility.

10.     The Residential Project consists of: (i) an independent living section (Areas A and B), located on the west side; (ii) a one-story central building that serves as the main entrance and common area (Area C); (iii) a three-story assisted living building (Area D), located on the east

129809670.1

side; and (iv) a one-story memory care building with an enclosed courtyard (Area E), also located

on the east side, which is depicted as follows:



Overall site plan with the five buildings identified as Areas A through E as labeled on the architectural drawings.

11.    Other parties involved in the design and construction of the Residential Project

include: (A) LCS Development, LLC ("LCS"), the original developer on the Residential Project;

(B) Charles N. White Construction Company, which served as General Contractor for the

Residential Project; and (C) PRDG, LLC ("PRDG" or "Architect"), which served as the Architect

of Record for the Residential Project.

### The PRDG Agreement

12.     Pursuant to a certain Standard Form of Agreement Between Owner and Consultant (Lump Sum Contract), dated April 2, 2015 (the "PRDG Agreement"), LCS retained PRDG as the Architect of Record on the Project.

13.     Pursuant to a certain Assignment and Assumption of Contracts and Permits, dated December 28, 2015, LCS assigned "all rights, options, benefits, privileges, duties and obligations" under the PRDG Agreement to Plaintiff, and Plaintiff accepted the assignment.

14.     Pursuant to the PRDG Agreement, PRDG was not prohibited from entering into subcontracts with others for Services within the scope of the PRDG Agreement. *See* PRDG Agreement, Art. I, §1.05.

15.     Pursuant to the PRDG Agreement, in the event PRDG entered into subcontracts with Subconsultants, PRDG agreed that it "shall bind each and every Subconsultant to the terms stated [in the PRDG Agreement] as the Consultant is bound [and] … shall require all Subconsultants to include a similar provision making the terms stated [in the PRDG Agreement] … binding in each and every subcontract Subconsultant issues for Services …." *See* PRDG Agreement, Art. I, §1.05.1.

16.     Pursuant to the PRDG Agreement, PRDG agreed "to include a provision in all subcontracts issued for work [t]hereunder allowing Consultant to assign said subcontract to Owner or Owner's designee without Subconsultant's consent." *See* PRDG Agreement, Art. I, 1.05.3.

### The SSR Agreement

17.     Pursuant to a certain proposal and letter agreement, dated February 18, 2015 and executed by SSR on March 30, 2015 (the "SSR Agreement"), PRDG retained SSR as the mechanical engineering sub-consultant on the Project.

129809670.1

18.     Pursuant to the SSR Agreement's Attachment A – Scope of Services, SSR agreed that its "Scope of Services" included "Mechanical, Electrical, Plumbing and Fire Protection Design Consulting Services."

19.     Pursuant to the SSR Agreement's Attachment A – Scope of Services, SSR further agreed to "provide full MEP/FP Engineering services for the project, including initial conceptual planning discussions with the Owner and Architect, Schematic Design, Design development, Construction Documents, Bidding and Negotiation and Contract Administration."

20.     Pursuant to the SSR Agreement's Attachment A – Scope of Services, SSR further agreed to "provide drawings and specifications as stated in the 02/12/2015 RFP – Description of Project."

21.     Pursuant to the SSR Agreement's Attachment A – Scope of Services, SSR further agreed to "Construction Contract Administration," including "an estimate that 4 man trips to the site will be required during the Design Phase and 18 man trips during the Construction Contract Administration Phase.   This estimate is based on the anticipated Construction Contract Administration Phase duration of 18 months."

22.     Pursuant to the SSR Agreement's Attachment A – Scope of Services, SSR further agreed that it "will perform its services as expeditiously as is consistent with the normal standard of care and orderly progress of information flow, production and QA\QC for the project."

23.     Pursuant to the SSR Agreement's Attachment C – Special Terms and Conditions, SSR agreed that its "services shall be performed in a manner consistent with the degree of skill and care ordinarily exercised by practicing design professionals performing similar services in same locality, and under the same or similar circumstances and conditions."

129809670.1

24.     Pursuant to the SSR Agreement's Attachment C – Special Terms and Conditions, SSR further agreed "consistent with its professional standard of care, Consultant's work product shall seek to comply with applicable laws and Codes, and official interpretation thereof."

25.     The SSR Agreement specifically incorporates by reference AIA Document C401 - 2007, Standard Form of Agreement Between Architect and Consultant ("AIA C401"). The SSR Agreement provides "in the event that a provision of the [AIA] C401 is inconsistent with a provision of the [SSR] Agreement, [the SSR] Agreement shall govern."

26.     Pursuant to AIA C401, "the Architect shall assume toward the Consultant all obligations and responsibilities that the Owner assumes toward the Architect, and the Consultant shall assume toward the Architect all obligations and responsibilities that the Architect assumes toward the Owner. Insofar as applicable to this Agreement, the Architect shall have the benefit of all rights, remedies and redress against the Consultant that the Owner, under the Prime Agreement, has against the Architect, and the Consultant shall have the benefit of all rights, remedies and redress against the Architect that the Architect, under the Prime Agreement, has against the Owner. Where a provision of the Prime Agreement is inconsistent with a provision of this Agreement, this Agreement shall govern." *See* AIA C401, §1.3.

27.     Pursuant to AIA C401, "[t]he Consultant is an independent contractor for This Portion of the Project. The Consultant is responsible for methods and means used in performing its services under this Agreement, and is not an employee, agent or partner of the Architect. The Architect shall not be responsible for the acts or omissions of the Consultant." *See* AIA C401, §1.4.

28.     Pursuant to AIA C401, "[t]he Consultant shall perform its services consistent with the professional skill and care ordinarily provided by professionals practicing in the same or

similar locality under the same or similar circumstances. The Consultant shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project." *See* AIA C401, §2.1.

29.     Pursuant to AIA C401, "[t]he Consultant shall identify a representative authorized to act on behalf of the Consultant with respect to This Portion of the Project, and key personnel who will perform the Consultant's services." *See* AIA C401, §2.2.

30.     Pursuant to AIA C401, "[t]he Consultant shall recommend to the Architect the appropriate investigations, surveys, tests, analyses, reports and the services of other consultants that should be obtained for the proper execution of the Consultant's services." *See* AIA C401, §2.3.

31.     Pursuant to AIA C401, "[t]he Consultant shall coordinate all aspects of its design of the Work for This Portion of the Project with the Work designed by the Architect and other consultants, as necessary for the proper coordination of the Project." *See* AIA C401, §2.4.

32.     Pursuant to AIA C401, "[t]he Consultant shall provide copies of drawings, reports, specifications and other necessary information to the Architect and other consultants in the format the Architect requires." *See* AIA C401, §2.5.

33.     Pursuant to AIA C401, "[t]he Consultant shall provide prompt written notice to the Architect if the Consultant becomes aware of any errors, omissions or inconsistencies in the services or information provided by the Architect or other consultants." *See* AIA C401, §2.6.

34.     Pursuant to AIA C401, "[t]he Consultant shall provide the Architect with the same professional services for This Portion of the Project as the Architect is required to provide to the Owner under the Prime Agreement." *See* AIA C401, §3.1.

35.     Pursuant to AIA C401, "[t]he Consultant shall ascertain the requirements for This Portion of the Project and shall confirm such requirements to the Architect." *See* AIA C401, §3.1.1.

36.     Pursuant to AIA C401, "[i]f required in the jurisdiction where the Project is located, the Consultant shall be licensed to perform the services described in this Section 3.1, or shall cause such services to be performed by appropriately licensed design professionals." *See* AIA C401, §3.1.2.

37.     Pursuant to AIA C401, "[u]pon request of the Architect, the Consultant shall furnish to the Architect, with reasonable promptness, interpretations of the Contract Documents prepared by the Consultant." *See* AIA C401, §3.1.3.

38.     Pursuant to AIA C401, "[t]he Consultant shall, within time limits agreed upon or otherwise with reasonable promptness, render written recommendations on claims, disputes and other matters in question between the Owner and Contractor relating to the execution or progress of This Portion of the Project as provided by the Contract Documents." *See* AIA C401, §3.1.4.

39.     Pursuant to AIA C401, "[t]he Consultant shall assist the Architect in determining whether the Architect shall reject Work for This Portion of the Project which does not conform to the Contract Documents or whether additional inspection or testing is required." *See* AIA C401, §3.1.5.

40.     Pursuant to AIA C401, "[o]n the Consultant's request for This Portion of the Project, the Architect shall furnish to the Consultant, in a timely manner, (1) detailed layouts showing the location of connections, and (2) tabulations giving sizes, loads and other information on equipment designed, specified or furnished by others for design and coordination of This Portion of the Project." *See* AIA C401, §5.3.

9

41.     Pursuant to AIA C401, "[i]f the Consultant reasonably requests information from investigations, surveys, tests, analyses and reports, or the services of other consultants not within the scope of the Consultant's services, the Architect shall request that the Owner furnish the information or services." *See* AIA C401, §5.7.

42.     Pursuant to AIA C401, "[t]he Architect shall be entitled to rely on the accuracy and completeness of services and information furnished by the Consultant. The Architect shall provide prompt written notice to the Consultant if the Architect becomes aware of any errors, omissions or inconsistencies in such services or information." *See* AIA C401, §5.8.

43.     Pursuant to AIA C401, "[t]he Consultant shall indemnify and hold the Architect and the Architect's officers and employees harmless from and against damages, losses and judgments arising from claims by third parties, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are caused by the negligent acts or omissions of the Consultant, its employees and its consultants in the performance of professional services under this Agreement." *See* AIA C401, §8.3.

44.     Pursuant to AIA C401, "[t]he Architect and Consultant, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement." *See* AIA C401, §10.3.

45.     Pursuant to AIA C401, "[n]othing contained in this Agreement shall create a contractual relationship with, or a cause of action in favor of, a third party against either the Architect or Consultant." *See* AIA C401, §10.4.

### Assignment of PRDG Agreement to BMSH, Consent of SSR

46.     Pursuant to AIA C401, "[n]either Architect nor Consultant shall assign this Agreement without the written consent of the other." *See* AIA C401, §10.3.  Pursuant a certain

Consent to Assignment, SSR consented in writing to the Assignment of the SSR Agreement from PRDG to Plaintiff.

47.    On January 6, 2022, PRDG and Plaintiff executed a certain Assignment of Contract in which "PRDG (the 'Assignor') hereby grants, transfers and assigns the SSR [Agreement] and the entirety of Assignor's contractual rights, title, interests, obligations and duties in the SSR [Agreement] to BMSH (the 'Assignee')."

48.    Pursuant to the Consent to Assignment, SSR agreed that "any lawsuit filed against SSR arising out of the SSR [Agreement] or the Assignment shall be brought exclusively in and shall only be brought in the United States District Court for the Southern District of Texas, Houston Division."

49.    Further, pursuant to the Consent to Assignment, SSR agreed "not to contest the validity of this Consent [to Assignment] or the Assignment in any litigation brought by BMSH against SSR related to the Katy Senior Living Facility and filed in the United States District Court for the Southern District of Texas, Houston Division."

### **Independent Duty of Care**

50.    In connection with the design services it provided for the Residential Project, SSR had an independent duty to ensure that its work/services were done in accordance with all applicable professional and industry standards, plans, specifications, recommendations and building codes.

51.    SSR also had an independent duty to exercise reasonable control and supervision over any employees, subcontractors and/or subconsultants whom it may have hired to perform work/services for the Residential Project.

129809670.1

### Design Defects at the Residential Project

52.     As a result of the errors and omissions of SSR, and the failure to adhere to the 2012 International Mechanical Code, 2012 International Energy Code, and select Texas Codes, the Residential Project suffers from the following design defects and deficiencies, among others, which have caused, and will continue to cause, resultant and consequential property and other damages, including but not limited to:

a.     **Area A- Independent Living Area**

   i.   Vertical packaged HVAC units (VTHP) installed in each residential suite were negligently designed and installed.

   ii.  Hurricane sleeves and louvers were not specified or installed.

   iii. Sleeves for the VTHP units were not installed in accordance with the manufacturer's installation instructions.

   iv.  Outside air openings were left obstructed as a result of failure to remove the factory-provided cover plate.

   v.   Design provides inadequate mechanical ventilation of residential suites.

b.     **Area B- Independent Living Area**

   i.   Vertical packaged HVAC units (VTHP) installed in each residential suite were negligently designed and installed.

   ii.  Hurricane sleeves and louvers were not specified or installed.

   iii. Sleeves for the VTHP units were not installed in accordance with the manufacturer's installation instructions.

   iv.  Outside air openings were left obstructed as a result of failure to remove the factory-provided cover plate.

12

       *v.*  Design provides inadequate mechanical ventilation of residential suites.

    c.    **Area D- Assisted Living Area**

       *i.*  Vertical packaged HVAC units (VTHP) installed in each residential suite were negligently designed and installed.

       *ii.*  Hurricane sleeves and louvers were not specified or installed.

       *iii.*  Sleeves for the VTHP units were not installed in accordance with the manufacturer's installation instructions.

       *iv.*  Outside air openings were left obstructed as a result of failure to remove the factory-provided cover plate.

       *v.*  Design provides inadequate mechanical ventilation of residential suites.

    d.    **Area E- Memory Care Area**

       *i.*  Vertical packaged HVAC units (VTHP) installed in each residential suite were negligently designed and installed.

       *ii.*  Hurricane sleeves and louvers were not specified or installed.

       *iii.*  Sleeves for the VTHP units were not installed in accordance with the manufacturer's installation instructions.

       *iv.*  Outside air openings were left obstructed as a result of failure to remove the factory-provided cover plate.

       *v.*  Design provides inadequate mechanical ventilation of the individual rooms in the Memory Care Area.

53.    The above list of design defects is not exhaustive. Plaintiff continues to discover additional defects and non-compliant conditions. The above listing may be subject to revision and expansion as a result of newly discovered conditions.

129809670.1

54.    SSR had construction administrative responsibilities which included periodic site visit review and to provide quality assurance and quality control. At any point on any of the reviews, SSR could have ascertained the defects.

55.    Plaintiff has sustained and/or will sustain damages, by way of illustration, actual property damage to the Residential Project, loss of use and/or other losses, and consequential damage to, and the loss of use of the Residential Project over time from the date those areas were first put to their intended use on account of the fault and/or negligent actions or omissions, individually or by and through the managers, officers, directors, employees, agents, subcontractors, subconsultants and/or contractors, of SSR. The occurrence of this property damage and/or loss of use were unmanifested and unknown to Plaintiff until it progressed to the point it was reasonably detectable to Plaintiff or through detection by a professional engineer or architect.

56.    As a result of the fault, acts and/or omissions of SSR, Plaintiff has sustained damages or is liable for such damages including, by way of illustration, property damage, diminished value, past and future repair and mitigation expenses, loss of the use of a portion of the Residential Project, investigative costs, engineering fees, attorney fees and litigation costs, among other damages, injuries and losses, including damages, injuries or losses paid or incurred by others, which recovery has been assigned or transferred to one or more of the Plaintiff by contract or other agreement, statute or operation of law.

## SSR's Misrepresentations and Omissions

57.    At the time SSR was involved with, and provided design services for the Residential Project, it knew or should have known that a failure to follow a reasonable professional standard of care in providing its design services for the Residential Project would constitute an adverse material fact and that such information ought to be disclosed to PRDG and/or Plaintiff.

14

SSR knew or should have known that the reasonable professional standard of care of engineers in Texas included the design of the Residential Project in such a way as to avoid the design defects and deficiencies present at the Residential Project.

58.     At the time SSR designed and/or constructed the Residential Project, SSR knew or should have known that the failure of contractors, engineers and architects to comply with a reasonable professional standard of care in the design of improvements to real property constituted adverse material facts and information that ought to have been disclosed to PRDG and/or Plaintiff (including any predecessors in interest). It was foreseeable to SSR that Plaintiff would be members of a class of people that would be expected to rely upon statements, representations, concealments, and non-disclosures by SSR and its agents.

59.     Upon information and belief, as to the design defects and deficiencies, among others, set forth in Paragraph 52 above, SSR intentionally misrepresented or negligently misrepresented the quality, condition, nature, suitability and fitness of the Residential Project by representing, or causing to be represented, or by failing to disclose, that the Residential Project was of a particular standard, grade, or quality, when it should have known that it was not. Specifically, as to the design defects and deficiencies, among others, set forth in Paragraph 52 above, SSR represented without limitation that:

> a.     The mechanical elements of the Residential Project were built within the recognized standards of the industry, when, in fact, the mechanical elements of the Residential Project were not constructed in compliance with those standards;
>
> b.     The Residential Project was designed to meet the reasonable standard of care for design professionals in Texas, when in fact it was not;

c.     The Residential Project was designed in compliance with all applicable codes (and would continue to comply with such codes if reasonably maintained), when in fact it was not; and/or

d.     The mechanical elements of the Residential Project were built in compliance with the plans and specifications, when in fact they were not.

60.     Each of the non-disclosed facts, as set forth above, among others, were adverse material facts or information that were pertinent to the decisions of Plaintiff and should have been disclosed by SSR so that Plaintiff could effectively carry out the performance of its duties, including its duty to care for, maintain, and repair the Residential Project.

**SSR's Vicarious Liability**

61.     SSR, its agents and employees consciously and deliberately pursued a concerted and common plan, design, and course of conduct and action, expressly or impliedly, and the execution of this common plan or design was done tortiously or otherwise wrongfully, as described in this Complaint, resulting in the damages alleged.

62.     SSR is vicariously liable as a matter of law for the tortious or otherwise wrongful actions and/or omissions of its engineers, employees, subcontractors, independent contractors, and its agents.

63.     At all times material to this Complaint, SSR was acting through its officers, directors, managers, principals, members, employees, agents and/or other authorized representatives and, as such, is vicariously liable for their conduct, omissions and wrongful acts.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

64.     Plaintiff incorporates paragraphs 1 through 63 by this reference.

16

65.     PRDG contracted with SSR to provide design and related services, including construction observations for the Residential Project.

66.     With SSR's written consent, PRDG assigned all contractual rights, title, interests, obligations and duties in the SSR Agreement to Plaintiff.

67.     Alternatively, Plaintiff is an intended third-party beneficiary of the SSR Agreement.

68.     SSR breached the SSR Agreement by, among other things, failing to properly perform the services for the Residential Project that were the subject of the SSR Agreement.

69.     Plaintiff has been damaged as a result of SSR's breach of the SSR Agreement.

### SECOND CLAIM FOR RELIEF
**(Professional Negligence)**

70.     Plaintiff incorporates paragraphs 1 through 69 by this reference.

71.     SSR owed a duty to Plaintiff, independent of any contractual duties, to conduct its operations and perform its services related to the design of the Residential Project with due care, caution, and skill and to otherwise act without negligence.

72.     SSR owed a duty to Plaintiff, independent of any contractual duties, to exercise reasonable care in its retention of design professionals, consultants, subconsultants and employees, and in its supervision, inspection, design, observations and/or quality control relating to the Residential Project.

73.     SSR breached these duties of care as set forth in more detail herein.

74.     SSR's negligence in relation to the design of the Residential Project has damaged the Residential Project causing Plaintiff resultant and consequential property and other damages.

### THIRD CLAIM FOR RELIEF
**(Negligence *Per Se*)**

75.     Plaintiff incorporates paragraphs 1 through 74 by this reference.

76.     SSR owed a duty to Plaintiff, independent of any contractual duties, to ensure that all design work was performed in accordance with industry standards, all applicable Texas statutes, applicable building codes, applicable manufacturer's installation instructions, applicable ordinances and/or applicable plans and specifications, or a greater duty of care if reasonably required under the circumstances.

77.     SSR violated the applicable statutes, ordinances, manufacturer's installation instructions and/or building codes by failing to design the Residential Project in accordance with the applicable statutes, ordinances, manufacturer's installation instructions and/or building codes.

78.     One of the purposes of the applicable statutes, ordinances and building codes was to protect against the type of damages sustained by Plaintiff.

79.     The Plaintiff is a member of the group of persons the applicable statutes, ordinances and building codes were intended to protect.

80.     SSR's violation of the applicable statutes, ordinances and/or building codes constitutes negligence *per se.*

81.     SSR's violation of these statutes, ordinances and/or building codes damaged Plaintiff.

### FOURTH CLAIM FOR RELIEF
**(Negligent Misrepresentation/Nondisclosure)**

82.     Plaintiff incorporates paragraphs 1 through 81 by this reference.

83.     SSR caused or permitted the misrepresentations to be made to Plaintiff as set forth herein.

84.     Alternatively, SSR failed to disclose or caused the failure to disclose certain material facts to Plaintiff as set forth herein, when it had a duty to disclose these facts.

85.     In causing or permitting the information to be communicated to Plaintiff, SSR did so knowing the information was material and that the representations were false or made with reckless disregard as to whether the representations were true or false. Furthermore, to the extent the misrepresentations concerned its present intent; it negligently misrepresented its present intent.

86.     SSR knowingly, intentionally, recklessly or negligently failed to disclose, caused the failure to disclose, or ratified the non-disclosure of information to Plaintiff, including, without limitation, the information specifically described above, which information was material and which information they were under a duty to disclose.

87.     SSR or the persons whose acts and omissions it ratified had a duty to cause the disclosure to Plaintiff of the true adverse material facts or information in an understandable manner.

88.     SSR failed to cause the disclosure of these adverse material facts or information to Plaintiff with the intent that Plaintiff rely on such failure to disclose.

89.     This reliance was a cause of the physical harm to the Residential Project, as well as economic loss to Plaintiff requiring repairs at the Residential Project.

90.     SSR's negligent misrepresentation/nondisclosure damaged Plaintiff.

**<u>CONDITIONS PRECEDENT</u>**

91.     All conditions precedent to the recovery of the relief requested by Plaintiff herein have been performed, have occurred, or have been waived.

129809670.1

92.     A Certificate of Merit, pursuant to Tex. Civ. Prac. & Rem. Code Ann. §150.002, executed by Robert B. Elkins, Jr., P.E., BCxP is attached as **Exhibit 1** to this Complaint and is incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

93.     Plaintiff provided an RCLA Notice of Claim, pursuant to Tex. Prop. Code Ann. § 27.004, to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in its favor and against Defendant, as follows:

1.     For Plaintiff's actual damages and/or other losses, past and future repair and mitigation expenses, consequential damages to, and the loss of the use of, various elements and/or portions of the Residential Project, and other direct economic costs, engineering fees, moving expenses, attorneys' fees and litigation costs, including, without limitation, fees of experts, including engineering and construction experts, in an amount to be proven at the trial;

2.     For the cost of repairing the Residential Project to a reasonably good condition, and to a better condition if that was what was promised or represented by Defendant, storage and cleaning costs incurred as a result of repairs, in an amount to proven at the trial;

3.     For the cost of the replacement of any defective design elements, as well as the repair of those portions of the Residential Project which Respondents have the legal responsibility to repair, and which were damaged by these defective design elements;

4.     For interest as permitted by law from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid at the highest lawful rate;

129809670.1

5.    For specific performance of the promises made by Respondents that remain unfulfilled, and for specific performance of the representations made by Respondents that were false; or, alternatively, for specific restitution and payment to Claimant in the amount necessary for Claimant to fund the cost of fulfilling such promises and/or effecting such representations;

6.    For such other and further relief as the Arbitrator deems proper; and

7.    For attorney's fees and costs as permitted by Tex. Civ. Prac. & Rem. Code Ann. § 38.0015.

Respectfully submitted this 21st day of January 2022.

/s/ K. Patrick Babb

Patrick J. Casey, Esq., Attorney-in-Charge
CO State Bar No. 23953
SDTX Bar No. 3723388
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: 303-383-7643
Fax: 303-292-1300
Email: pcasey@foxrothschild.com

K. Patrick Babb, Esq., Of Counsel
TX State Bar No. 24077060
SDTX Bar No. 3307029
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone: 214-231-5736
Fax: 972-404-0516
Email: pbabb@foxrothschild.com

***Attorneys for Plaintiff BMSH I Katy TX, LLC***