UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BMSH I KATY TX, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-00218 |
| | § | |
| **SMITH SECKMAN REID, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This action arises out of the construction of a senior living facility in Katy, Texas. Plaintiff BMSH I Katy TX, LLC, ("BMSH") owns the senior living facility and hired PRDG, LLC, ("PRDG") as the main architect. PRDG, in turn, hired Defendant Smith Seckman Reid, Inc., ("SSR") as the mechanical engineering subconsultant. Once the project was completed, BMSH discovered significant flaws in the HVAC system that SSR designed for the community. After learning of these flaws, BMSH settled with PRDG and sued SSR here.

Pending before the Court is Plaintiff's Motion for Leave to File Amended Complaint. (Dkt. No. 81). For the reasons below, the Court **GRANTS** the Motion.

### I. BACKGROUND[1]

BMSH owns a senior living facility in Katy, Texas, known as "The Delaney at Parkway Lakes" or the "Project." (Dkt. No. 1 at 3). To develop this community, BMSH

---

[1] The Court makes the following factual findings solely for purposes of this Order.

retained PRDG as the Architect of Record for the Residential Project, (*id.* at 4), and PRDG retained SSR as the mechanical engineering subconsultant, (*id.* at 5). The scope of SSR's agreement included mechanical-, electrical-, plumbing-, and fire-protection-design consulting services. (*Id.* at 6).

In 2017, construction finished. (Dkt. No. 39 at 3). But BMSH eventually discovered several flaws in the HVAC system SSR designed. (Dkt. No. 1 at 12–14). BMSH served SSR with a demand for arbitration, and BMSH, PRDG, and SSR subsequently mediated. (Dkt. No. 81 at 5 n.1). BMSH and PRDG settled after the mediation. (*Id.*). That settlement involved all three companies consenting to a contract assignment, where PRDG assigned to BMSH all its rights, title, interests, obligations, and duties under its contract with SSR. (*Id.*). As part of that consent to the assignment, BMSH and SSR agreed to litigate their claims here. (*Id.*).

On January 21, 2022, BMSH sued SSR. (Dkt. No. 1). BMSH originally brought four claims: (1) breach of contract, (2) professional negligence, (3) negligence per se, and (4) negligent misrepresentation or nondisclosure. (*Id.* at 16–19). But after SSR moved to dismiss BMSH's original complaint, (Dkt. No. 8), the Parties agreed to dismiss BMSH's negligence-per se and negligent-misrepresentation claims with prejudice, (Dkt. No. 9).

A little over two years after the original complaint, SSR moved to dismiss the remaining claims and for summary judgment. (Dkt. No. 39). Both parties filed responses and replies. (*See* Dkt. Nos. 49, 52, 53, 55, 56). That briefing is currently pending before the Court.

On July 23, 2024, BMSH moved for leave to amend its complaint. (Dkt. No. 81). BMSH sought to conform the complaint to allegedly newly discovered evidence and include claims for fraudulent inducement and concealment. (*Id.* at 5). SSR opposed the amendment as an "attempt to avoid summary judgment and unfairly prejudice SSR with antiquated claims . . . nearly identical" to the claims BMSH previously dismissed." (Dkt. No. 85 at 1).

## II.    LEGAL STANDARD

"Ordinarily, Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings." *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam). But "[w]hen a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 420 (5th Cir. 2013) (per curiam). On one hand, "Rule 15 governs motions to amend made *before* the expiration of a scheduling order's deadline." *Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods., Inc.*, 410 F. App'x 738, 740 (5th Cir. 2010) (per curiam) (emphasis added). On the other hand, "Rule 16(b) governs amendment of pleadings *after* a scheduling order deadline has expired." *S&W Enters., LLC, v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (emphasis added).

Starting with Rule 15, Rule 15(a)(2) of the Federal Rules of Civil Procedure says that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* While leave is not automatic, it does "evince[] a bias in favor of

granting leave to amend." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). As a result, "the discretion of the district court is not broad enough to permit denial," unless the court has a "substantial reason to deny leave to amend." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). In determining whether leave to amend should granted or denied under Rule 15, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failures to cure any deficiencies, (4) undue prejudice, and (5) futility of amendment. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

Next, considering Rule 16, "Rule 16(b) provides that a scheduling order shall not be modified except upon a showing of good cause and by leave of the district judge." *S&W Enters., LLC,* 315 F.3d at 535 (internal quotations omitted). Thus, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.* at 536. "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Courts consider four factors in determining whether good cause exists: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (internal quotations and alterations omitted).

4

### III. DISCUSSION

The Court's current scheduling order has no deadline for amending pleadings. (*See* Dkt. No. 69). It only imposes an August 15, 2024, deadline for pretrial motions. (*Id.*). BMSH moved for leave to amend its complaint on July 23, 2024, (Dkt. No. 81)—twenty-three days before the pretrial motion deadline. Even so, the Court finds that granting BMSH's motion for leave will require modifying the current scheduling order to allow the Parties sufficient time for briefing and trial preparation. Therefore, the Court addresses Rule 16's good-cause standard before Rule 15's more liberal standard.

#### A. RULE 16 STANDARD

Starting with Rule 16, the Court must consider "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., LLC,* 315 F.3d at 536 (internal quotations and alterations omitted). The Court examines each in turn.

##### 1. BMSH's Explanation for Delay

Generally, "[n]ew information learned during discovery is good cause to amend under Rule 16." *Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*, No. 4:10-CV-01708, 2011 WL 2193294, at *5 (S.D. Tex. June 6, 2011); *see Udoewa v. Plus4 Credit Union*, No. 4:08–CV–03054, 2010 WL 1169963, at *2–3 (S.D. Tex. Mar. 23, 2010) (granting leave to amend to add claim based on deposition testimony). For example, another court in this district concluded that a plaintiff "easily satisfie[d] her burden" on this first factor when she could amend her complaint to add a new party only after learning of the relevant

5

individual at a deposition. *Dennis v. Fiesta Mart, LLC*, No. 4:23-CV-00720, 2024 WL 197690, at *2 (S.D. Tex. Jan. 18, 2024), *report and recommendation adopted*, No. 4:23-CV-00720, 2024 WL 345517 (S.D. Tex. Jan. 30, 2024).

Here, BMSH did not receive the emails supporting their fraud claims until May 3, 2024, and took deposition testimony of the key witnesses within two weeks following the production of the emails. (Dkt. No. 81 at 14–15). Therefore, the Court agrees that BMSH "has been diligent in its discovery obligations" and has moved for leave "promptly after receiving the SSR Emails and deposing key witnesses." (*Id.* at 15).

SSR counters, however, that BMSH "knew the facts surrounding its 'new' fraud claims from the start." (Dkt. No. 85 at 12). SSR contends that BMSH's new fraud claims are not "really" based on the recent emails or deposition testimony but on an internal report that SSR produced in its initial disclosures in April 2022. (*Id.*).

The Court disagrees. For one, "simple allegations that defendants possess fraudulent intent" will not satisfy Rule 9(b)'s heightened pleading standard for fraud claims because those claims require a plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023) (alterations omitted) (first quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); then quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). And here, "BMSH didn't have facts to allege claims 'with particularity,' including why the Report was drafted, what information was considered, who at SSR reviewed it,

whether Nordholm was aware of his design errors, and [whether] SSR's cho[se] to conceal" the errors. (Dkt. No. 93 at 3).

Another court in this district found good cause to add a new defendant when the plaintiffs "only recently understood the relationship" between the new defendant and previous defendants and "only recently discovered a reason to allege" a cause of action against the new defendant. *Ultra Premium Servs., LLC v. OFS Int'l, LLC*, No. 4:19-CV-02277, 2019 WL 13191627, at *2 (S.D. Tex. Dec. 18, 2019). That was the case, even though the plaintiffs knew of "the existence of [the new defendant] *from the earliest days of this lawsuit.*" *Id.* (emphasis added). Accordingly, the Court finds that the first factor favors BMSH.

### 2. The Importance of the Amendment

Courts have found "proposed amendments to be important where they 'potentially provide additional grounds' for a party to recover, or 'directly affect' a party's prospects of ultimate recovery." *Mallory v. Lease Supervisors, LLC*, No. 3:17-CV-03063, 2019 WL 3253364, at *3 (N.D. Tex. July 19, 2019) (cleaned up) (first quoting *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. 3:06-CV-01578, 2009 WL 3074618, at *37 (N.D. Tex. Mar. 30, 2009); then quoting *Richards Grp., Inc. v. Brock*, No. 3:06-CV-00799, 2008 WL 1722250, at *2 (N.D. Tex. Apr. 14, 2008)).

Here, BMSH explains that the amendment is important because adding the fraud claims will ensure that (1) "BMSH obtains complete relief from the damages flowing from SSR's deficient HVAC design," and (2) SSR "is not rewarded for its discovery misconduct and gamesmanship." (Dkt. No. 81 at 15–16). BMSH also states that denying the

7

amendment would preclude BMSH "from ever bringing the claims under Texas law" because of claim preclusion. (*Id.* at 15). Based on these assertions, the Court finds that BMSH's amendment is important for two reasons: (1) it may alter the remedies or damages available to BMSH, and (2) refusing to allow the amendment would preclude BMSH from bringing these claims against SSR in the future. Accordingly, this factor favors BMSH.

### 3. Potential Prejudice to SSR

"Prejudice" is broadly defined as "[d]amage or detriment to one's legal rights or claims." *Prejudice*, Black's Law Dictionary (12th ed. 2024). Generally, "[c]ourts in this circuit have found prejudice where amendments would 'delay trial, restart a case at an earlier stage, or otherwise unfairly limit a [party's] ability to present [its] case at trial.'" *Cnty. of Harris v. Eli Lilly & Co.*, No. 4:19-CV-04994, 2021 WL 4427242, at *3 (S.D. Tex. Sept. 27, 2021) (quoting *Robles v. Archer W. Contractors, LLC*, No. 3:14-CV-01306, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015) (collecting cases)).

SSR argues that "discovery is closed, SSR's dispositive motions have been filed and briefed, leave was sought only after mediation, and the Pre-Trial Motions deadline [was only] two days away" from when it filed its response. (Dkt. No. 85 at 13). Thus, it "would be prejudiced by yet another delay in discovery, more deposition costs, re-briefing its summary judgment motion to include the new claims, and filing a new Rule 12(b)(6) motion to dismiss." (*Id.*). SSR further alleges that it would suffer prejudice because "it conducted discovery safe in its reliance on [BMSH's] stipulation to try the case on negligence and breach of theories alone." (*Id.*).

8

Those arguments fail. While BMSH's amendments come late in the game, this lateness is partly due to the recency of the discovery. And given the hidden nature of fraud claims—and SSR's alleged one-year delay in producing the relevant emails BMSH requested, (Dkt. No. 81 at 16)—BMSH's recent discovery of fraud evidence is unsurprising. Incidentally, the considerable discovery that has taken place here works against SSR's prejudice argument because more discovery may be unnecessary. After all, "BMSH does not anticipate that" its amendment will require "much, if any, further discovery." (*Id.* at 17). SSR has not shown that it will suffer "[d]amage or detriment to [its] legal rights or claims." *Prejudice*, Black's Law Dictionary (12th ed. 2024). Accordingly, the Court finds that this third factor favors BMSH.

### 4. The Availability of a Continuance

Both Parties agree that a continuance is available here. (Dkt. No. 85 at 14); (Dkt. No. 93 at 4). So, to the extent SSR suffers any prejudice, the Court finds that a continuance is still available.

\* \* \*

In sum, the Court finds: (1) BMSH has a sufficient explanation for moving for leave to amend at this stage; (2) BMSH's fraud claims constitute an important amendment; (3) SSR will not suffer undue prejudice from the addition of BMSH's fraud claims; and (4) a continuance is available to cure any prejudice SSR may suffer. Hence, the Court finds good cause to modify its scheduling order under Rule 16(b).

### B.     RULE 15 STANDARD

Transitioning to Rule 15, the Court must determine whether to grant or deny leave by considering any (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failures to cure any deficiencies, (4) undue prejudice, and (5) futility of amendment. *Jacobsen*, 133 F.3d at 318. Because the Court already addressed undue delay, bad faith or dilatory motive, and undue prejudice in its Rule 16 analysis, it need not address them here. The Court thus looks only to the remaining factors.

#### 1.     Repeated Failures to Cure

BMSH's Motion is the first motion for leave that it has filed. And while SSR argues that BMSH agreed to dismiss BMSH's negligence-per se and negligent-misrepresentation claims with prejudice and "should not be allowed to circumvent that decision now," (Dkt. No. 85 at 16), nowhere did the language of that stipulation indicate that BMSH agreed to dismiss any fraudulent inducement or fraudulent concealment claims, (*see* Dkt. No. 9). BMSH's current motion for leave does not stem from a repeated failure to cure a deficiency, but rather from newly discovered evidence. The Court accordingly finds that this factor favors BMSH.

#### 2.     Futility of Amendment

Finally, in the motion-for-leave context, "futility" means that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling*, 234 F.3d at 873. "[T]o determine futility," courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

10

SSR claims that BMSH's new fraud claims are "futile" because (1) BMSH's new fraud claims are barred by the economic-loss rule; (2) BMSH lacks standing; (3) the fraud claims are barred by the statute of limitations; (4) BMSH settled claims it may have had against SSR; (5) BMSH failed to plead essential elements of a fraudulent inducement claim; and (6) BMSH failed to plead essential elements of the fraudulent concealment claim. (Dkt. No. 85 at 17–23). None of these arguments are persuasive.

      a.    <u>Economic-Loss Rule</u>

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam) (citing *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 243 (Tex. 2014)). But the economic-loss rule does not bar a party from asserting a claim when two conditions are met: (1) "the duty allegedly breached is independent of the contractual undertaking," and (2) "the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (citing *LAN/STV*, 435 S.W.3d at 242–43). Courts must therefore consider "the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016). And relevant here, "[a]s for fraud *after* the formation of a contract, . . . there is no categorical rule as to whether the economic loss rule applies." *Safety Vision LLC v. LEI Tech. Can.*, ____ F.Supp.3d ____, ____, 2024 WL 3094649, at *8 (S.D. Tex. June 20, 2024)

11

(emphasis in original). Courts must instead look to: (1) the source of the duty and (2) the damages sought. *Id.* (citing *Ibe*, 836 F.3d at 526).

In this case, the duty SSR allegedly breached is independent of the contractual undertaking. *See Chapman Custom Homes, Inc.*, 445 S.W.3d at 718. BMSH's amended complaint proposes both a fraudulent inducement claim and a fraudulent concealment claim. (Dkt. No. 81-2 at 43–45). Both claims involve a duty separate from the contractual duties because there is "an independent legal duty not to commit the *intentional* tort of fraud." *Eastman Chem. Co. v. Niro, Inc.*, 80 F.Supp.2d 712, 717 (S.D. Tex. 2000) (emphasis in original); *Corporativo Grupo R SA de C.V. v. Marfield Ltd., Inc.*, No. 4:19-CV-01963, 2021 WL 5161736, at *3 (S.D. Tex. Sept. 16, 2021) ("[P]arties to a contract have an independent duty not to commit the intentional tort of fraud."). So, while BMSH agreed to dismiss its *negligent* misrepresentation and *negligence* per se claims, (Dkt. No. 9), its new *intentional* fraud claims concern a separate, independent duty under Texas common law rather than a duty imposed solely under the contract. *See Eastman Chem. Co.*, 80 F.Supp.2d at 717 (noting that the economic-loss rule will only preclude a tort cause of action when "the claim is for breach of duty created *solely* by contract rather than a duty imposed by law" (emphasis in original)).

BMSH seeks more than the economic loss of a contractual benefit under its proposed complaint. Rather, it "seeks damages that far exceed the benefit of the bargain or the mere 'replacement' of SSR's services (mechanical design services)," such as exemplary damages. (Dkt. No. 93 at 6). And, according to BMSH's amended complaint, its damages also include "*physical* harm to the Residential Project," not only economic

12

loss. (Dkt. No. 81-2 at 44, 45) (emphasis added). BMSH thus seeks more than economic loss. *See Chapman Custom Homes, Inc.*, 445 S.W.3d at 718.

But even if BMSH were only seeking economic losses from SSR's alleged actions, "tort damages are not precluded simply because a fraudulent representation causes only an economic loss." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Overall, the Court finds for purposes of this Order that (1) the duty SSR allegedly breached is independent of the contractual undertaking, and (2) BMSH seeks more than the mere economic loss of a contractual benefit. Accordingly, viewing the facts in the light most favorable to BMSH, the Court finds that the economic-loss rule does not make BMSH's amendment futile.

### b. BMSH's Standing

To establish standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992)).

Here, SSR only contests the injury-in-fact element and argues that it "did not breach a contract or a legal duty to [BMSH] that, in turn, caused [BMSH] damages" because its contract was with PRDG, not BMSH. (Dkt. No. 85 at 19). According to SSR, therefore, BMSH's only remedy is for breach of the contract that PRDG assigned to it.

(*Id.*).  And even then, SSR argues that BMSH's claims fail because it has not alleged any injury to PRDG.  (*See id.* at 19–20).

The Court disagrees.  For one, even in light of the contract assignment, BMSH's injury is relevant to its new fraud claims because those claims are not limited to the breach of the assigned contract but are separate and independent of those contract claims.  And even if the Court's view were limited to the contract PRDG assigned to BMSH, BMSH's amended complaint repeatedly references how SSR's actions caused PRDG to rely on the misrepresentations or nondisclosures, induced PRDG to continue performing under its contract with SSR and caused PRDG to move forward with SSR's faulty designs.  (*See* Dkt. No. 81-2 at 43–45).  Viewing the factual allegations in the light most favorable to BMSH, the Court agrees with BMSH that "PRDG would be able to bring these fraud claims against SSR for damages PRDG would itself owe to BMSH as a result of SSR's design defects."  (Dkt. No. 93 at 8).  And, at the very least, SSR has failed to show otherwise.  Accordingly, SSR's standing arguments fail.

c. <u>Statute of Limitations</u>

In Texas, the statute of limitations for fraud is four years.  Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).  In a fraud case, the "statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence."  *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F.Supp.3d 552, 563 (S.D. Tex. 2016) (quoting *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997)).

BMSH alleged here that it "had no knowledge [of] SSR's fraudulent actions until at least April 8, 2022, when the Report was first produced," and there is no evidence to

14

the contrary. (Dkt. No. 93 at 7). The statute of limitations thus did not commence until April 2022, when SSR's alleged fraud was discovered or reasonably could have been discovered. Therefore, BMSH's fraud claims are not outside the statute-of-limitations period.

### d. Settlement with PRDG

SSR asserts that BMSH "settled all claims, including design claims like those it makes here[,] *against SSR*." (Dkt. No. 85 at 20) (emphasis added). Not so. The plain text of the settlement shows that BMSH settled "claims of construction defects, improper construction or design, . . . at the Project" against *PRDG*, not SSR. (*Id.*). And BMSH clarifies that "the PRDG settlement accounted *only* for PRDG's *architectural design defects*, expressly excluding damages due to SSR's faulty *mechanical design*—entirely separate injuries for which PRDG was liable and which BMSH did not settle or release." (Dkt. No. 93 at 7) (emphases in original). As a result, the Court finds that BMSH has not settled its claims against SSR, and BMSH's settlement with PRDG does not make its new fraud claims futile.

### e. Sufficiency of Facts for the Fraudulent Inducement Claim

The Court also finds that BMSH sufficiently pleaded its fraudulent inducement claim. Under Texas law, common-law fraud has six elements: "(1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury." *Ibe*, 836 F.3d at 525 (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)). "Fraudulent inducement is

15

a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

SSR argues that BMSH failed to plead several sufficient facts, including: (1) "[t]he existence of a contract with [BMSH];" (2) "a specific material misrepresentation that was known by SSR to be false at the time it was made;" (3) a "representation related to a contract with [BMSH] (rather than PRDG);" (4) "SSR's intent that [BMSH] (rather than PRDG) act on the misrepresentation made in relation to a contract with [BMSH];" (5) whether the "misrepresentation to [BMSH] was relied on;" (6) whether the "representation to [BMSH] caused injury (rather than a representation to PRDG);" (7) whether "a specific representation was made to [BMSH] ('and/or PRDG');" (8) "a promise made with no intention of performing at the time it was made;" or (9) damage to PRDG. (Dkt. No. 85 at 21). But the Court disagrees.

BMSH spent nine pages detailing the relevant contracts and the assignment of PRDG's contract. (*See* Dkt. No. 81-2 at 4–12). BMSH spent an additional twenty-six pages describing SSR's knowledge of the defects in the HVAC system, who had that knowledge, what SSR did (or did not do) with the explicit awareness of those major design flaws, and how SSR and its relevant employees were aware of the significant damages that would arise from those known defects. (*Id.* at 16–41). And based on these details, BMSH alleged that SSR falsely represented "that the mechanical systems will include makeup air that is

16

preconditioned and . . . [would] handle the humid environment." (*Id.* at 43). BMSH further complained that SSR knew those representations were false and made these representations with the knowledge that PRDG and BMSH would rely on SSR's recommendation and mechanical designs for the Project. (*Id.* at 43–44). BMSH even described the various defects and the resulting damages from those defects. (*Id.* at 13-16).

As a result, the Court disagrees with SSR and finds that BMSH pleaded sufficient facts for its fraudulent inducement claim. Accordingly, viewing the facts in favor of BMSH, the fraudulent inducement claim is not futile.

f. <u>Sufficiency of Facts for the Fraudulent Concealment Claim</u>

Like fraudulent inducement, fraudulent concealment is "a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Generally, fraudulent concealment "requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Tchr. Assocs. Ins. v. Union Lab. Life Ins.*, 414 F.3d 558, 567 (5th Cir. 2005) (citing *Schlumberger Tech. Corp.*, 959 S.W.2d at 181). Put simply, "[f]ailure to disclose a material fact is fraudulent only if the defendant has a duty to disclose that fact." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001).

A duty to disclose or a "duty to speak" may arise by (1) operation of law or (2) agreement of the parties. *Id.* As to the former, a person has a duty to speak when

17

(1) "a confidential or fiduciary relationship exists between the parties;" (2) "one party learns later that his previous affirmative statement was false or misleading;" (3) "one party knows that the other party is relying on a concealed fact, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth;" or (4) "one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth, . . . lest his partial disclosure convey a false impression." *Id.*

Similar to its fraudulent inducement arguments, SSR contends that BMSH failed to plead several sufficient facts for its fraudulent concealment claim, including whether (1) SSR "had [a] fiduciary or confidential relationship" with PRDG or BMSH; (2) SSR "had a general duty to disclose" to PRDG or BMSH; (3) SSR had to disclose an internal report that BMSH used as evidence of SSR's alleged fraud; (4) SSR "intended to induce" BMSH or PRDG to "take some action by concealment;" (5) BMSH "suffered some injury as [the] result of a breach of a duty to disclose information;" (6) PRDG "suffered some injury as [the] result of a breach of a duty to disclose information;" or (7) "PRDG (the assignor and contractual partner to SSR sustained damage or injury." (Dkt. No. 85 at 22-23).

Again, the Court disagrees. BMSH's amended complaint provided numerous details about SSR's knowledge of important defects in the HVAC system and how SSR's actions in light of that knowledge harmed BMSH and PRDG. (Dkt. No. 81-2 at 13–41). BMSH also detailed how SSR allegedly concealed major design flaws in the HVAC system for the Project and failed to disclose its awareness of significant damages that

18

would arise from known defects in the HVAC system. (*Id.* at 16–41). Taking those allegations as true, the Court finds that they plausibly give rise to a duty to disclose under the third category described above. *See Union Pac. Res. Grp., Inc.*, 247 F.3d at 586 (noting a duty to disclose when an ignorant party is "relying on a concealed fact"). And on top of the other fraudulent concealment elements addressed in the Court's fraudulent inducement analysis, the Court finds that BMSH plausibly pleaded SSR's concealment of material facts about the HVAC system. Accordingly, the Court finds that BMSH's fraudulent concealment claim is not futile.

## IV.   CONCLUSION

For the above reasons, BMSH's Motion for Leave to File Amended Complaint, (Dkt. No. 81), is **GRANTED**. It is therefore **ORDERED** that the Clerk accept for filing the document attached to the Motion as Exhibit B titled "First Amended Complaint."

Defendants' Motion to Dismiss and Motion for Summary Judgment, (Dkt. No. 39), is **DENIED AS MOOT**.

The Parties are **ORDERED** to file a Proposed Scheduling Order within 14 calendar days of the entry of this Order.

While SSR may file a motion for summary judgment with respect to the claims in the First Amended Complaint if appropriate, no more Rule 12 motions will be considered. Any legal or factual deficiency should be addressed in a motion for summary judgment.

It is SO ORDERED.

Signed on September 18, 2024.

                                                                                                       _____
                                                                                                          **DREW B. TIPTON**
                                                                               **UNITED STATES DISTRICT JUDGE**